**M. FORTUNOFF OF WESTBURY CORP., Plaintiff,**

**v.**

**PEERLESS INSURANCE CO., a subsidiary of Liberty Mutual Group, Defendant.**

**No. 01–CV–3667.**

United States District Court, E.D. New York.

March 27, 2003.

Raymond A. Selvaggio, Esq., Augello, Pezold & Hirschmann, P.C., Huntington, NY, for Plaintiff.

Edward Farman, Esq., Schindel, Farman & Lipsius, L.L.P., New York, NY, for Defendant.

## MEMORANDUM AND ORDER

SEYBERT, District Judge.

Pending before the Court are cross motions for summary judgment brought by both the Plaintiff, M. Fortunoff of Westbury Corp. ("Fortunoff" or "Plaintiff"), and the Defendant, Peerless Insurance Co. ("Peerless" or "Defendant"). Plaintiff commenced suit against the Defendant on June 1, 2001, by filing a Complaint alleging Breach of Contract.

## BACKGROUND

On December 17, 2001, the parties jointly submitted a "Stipulation of Facts" which sets forth the following:

Peerless issued a policy to Fredrickson which was in effect from September 1, 1994 through March 13, 1998. Stip. ¶¶ 3–4. An endorsement on ICC Form BMC–32 is attached to the policy. *Id.* ¶ 5. At all relevant times, Fredrickson operated as a motor common carrier as certified by the Interstate Commerce Commission ("ICC") and under an ICC permit which authorized it to operate as a motor contract carrier in interstate commerce. *Id.* ¶¶ 6–7. On or about March 1, 1997, Fortunoff and Fredrickson entered into a Transportation Service Agreement whereby they agreed

that Fredrickson would charge Fortunoff in consideration for transportation services. *Id.* ¶ 9. On or about March 9, 2001, Fortunoff presented damages claims to Peerless in connection with services provided by Fredrickson that it contended were covered under the insurance policy and the BMC–32 Endorsement. *Id.* ¶¶ 10–11. There is no dispute that Fredrickson, although liable, is insolvent and that Peerless has denied liability. *Id.* ¶¶ 13–15.

The controlling statute and regulation (referenced as 49 C.F.R. §§ 387.303(c) and 387.313) requires any insurance company that issues a cargo liability policy to issue a BMC–32 Endorsement to the policy. In this case, Defendant issued a cargo liability policy to Fredrickson which covered damage to property while Fredrickson performed transportation services, as a common carrier, for its customers and annexed the BMC–32 Endorsement. The Endorsement provided that the [insurance] company pay for property damage " 'belonging to such shipper or consignee, and coming into the possession of the insured [motor carrier] in connection with such transportation service....' " Cmplt. ¶ 7 (quoting BMC–32 Endorsement). Fortunoff alleges that Peerless's denial of liability constitutes a breach of its obligations under the Endorsement and seeks damages of $13,249.42. Cmplt. ¶¶ 17–18.

*DISCUSSION*

A district court may properly grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of proof is on the moving party to show that there is no genuine issue of material fact, *Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219,

1223 (2d Cir.1994) (citing *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir.1975)), and "all ambiguities must be resolved and all inferences drawn in favor of the party against whom summary judgment is sought." *Id.* (citing *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 249 (2d Cir.1985)); *see also Hayes v. New York City Dept. of Corrs.*, 84 F.3d 614, 619 (2d Cir.1996). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citing 10A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2725, at 93–95 (1983)).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505 (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). Under the law of the Second Circuit, "when no rational jury could find in favor of the nonmoving party because the evidence is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo*, 22 F.3d at 1224 (citing *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988)). Mere conclusory allegations, speculation or conjecture will not avail a party opposing summary judgment. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir.1996). It is within this framework that the Court addresses the present summary judgment motions.

■ Defendant has moved for summary judgment arguing that the BMC–32 Endorsement only gave rise to liability where Fredrickson was acting as a common carrier and that, because the Transportation

Agreement between Fredrickson and Plaintiff provided that Fredrickson was acting in its capacity as a contract carrier, Defendant has no liability here. The Defendant recognizes that the Interstate Commerce Commission Termination Act ("ICCTA") abolished the distinction between common and contract carriers. Memorandum of Law in Support of Defendant's Motion for Summary Judgment at 7. However, Defendant asserts that, pursuant to the "Transition Rule," 49 U.S.C. § 13902(d), a distinction between the types of carriers continues to exist and the BMC–32 Endorsement continues, therefore, to apply only to common carriers. *See Id.*

Plaintiff has moved for summary judgment arguing that ICCTA abolished the difference between common carriers and contract carriers. As such, Plaintiff asserts that the insurance requirements for both common and contract carriers are now the same; the BMC–32 Endorsement applies to all carriage contracts, and Defendant is thereby liable to Plaintiff pursuant to the BMC–32 Endorsement. Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment at 11 ("Pl.'s Mem."). Plaintiff argues, in the alternative, that assuming the insurance requirements are still different for common and contract carriers, Fredrickson contracted with Plaintiff and agreed to accept liability as a common carrier. Thus, the BMC–32 Endorsement, which allegedly applies only to common carriers, would make Defendant liable to Plaintiff. Pl.'s Mem. at 19.

No material issues of fact exist in this case. Therefore, this case is ripe for summary judgment. For the reasons set forth herein, the Court hereby GRANTS summary judgment in favor of the Plaintiff.

Whether Congress intended to eliminate all distinctions between common and contract carriers, specifically here, in respect to insurance requirements, is a question of law properly determined by the Court on a motion for summary judgment. In determining the meaning of a statute, the Court must first look to the plain language of the statute, and, if it is clear on its face, the analysis stops there. *See Blum v. Stenson,* 465 U.S. 886, 896, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984) ("Where, as here, resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative history if the statutory language is unclear."). With this general principle in mind, the Court will look to the statute's language for guidance.

The plain language of ICCTA abolishes the distinction between common carriers and contract carriers. The ICCTA defines motor carrier and contract carriage as follows:

(3) Carrier. The term "carrier" means a motor carrier, a water carrier, and a freight forwarder.

(4) Contract carriage. The term "contract carriage" means

(A) for transportation provided before January 1, 1996, service provided pursuant to a permit issued under section 10923, as in effect on December 31, 1995; and

(B) for transportation provided after December 31, 1995 service provided under an agreement entered into under section 14101(b).

(12) Motor Carrier. The term "motor carrier" means a person providing motor vehicle transportation for compensation.

49 U.S.C. § 13102(3), (4), and (12).

Further, ICCTA provides,

§ 13902. Registration of motor carriers

(a) Motor Carrier Generally.

(1) In general. Except as provided in this section, the Secretary shall register a person to provide transportation ... as a motor carrier if the Secretary finds that the person is willing and able to comply with—

(A) this part and the applicable regulations of the Secretary and the Board;

(B) any safety regulations imposed by the Secretary and the safety fitness requirements established by the Secretary under section 31144; and

(C) the minimum financial responsibility requirements established by the Secretary pursuant to sections 13906 and 31138.

49 U.S.C. § 13902(a)(1).

Congress' intent to abolish the distinction between common and contract carriers is also made clear in its legislative history. "The Committee does not intend, *through the elimination of the distinction,* to expand financial reporting to those carriers that are currently exempt through this technical change in definition." H.R. REP. NO. 104–311, at 119 (1995) (emphasis added).

It is clear from the facts of this case that, pursuant to the new statutory definitions, Fredrickson was a motor carrier providing contract carriage services. Fredrickson was a motor carrier because he was a person providing motor vehicle transportation of Fortunoff's goods for compensation. Fredrickson provided these services to Fortunoff after January 1, 1996 and pursuant to a contract under section 14101(b), which provides:

A carrier providing transportation or service ... may enter into a contract with a shipper ... to provide specified services under specified rates and conditions. ... The parties may not waive the provisions governing registration, insurance, or safety fitness.

49 U.S.C. § 14101(b).

It is also clear from the plain language of ICCTA that the elimination of the distinction is applied to insurance requirements. When construing a new law that amends or changes an old law, the Court must presume that Congress knew how the previous laws were applied and that any changes in the language of the new law were intended. *See Lorillard v. Pons,* 434 U.S. 575, 581, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) ("[W]here ... Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute."). Also, when Congress "re-enacts a statute without change," it is presumed that Congress was aware of the interpretations and applications of the law and intended not to disturb it. *Id.* With this principle in mind, the Court reviews the ICCTA security provision.

The predecessor to the current ICCTA security provision was 49 U.S.C. § 10927. In it, the Commission was allowed to "require a motor *common* carrier ... to file with the Commission a type of security sufficient to pay a shipper or consignee for damage to property of the shipper or consignee placed in the possession of the motor common carrier as the result of transportation provided under this subtitle." 49 U.S.C. § 10927(a)(3) (emphasis added). As per the language of the statute, the BMC–32 Endorsement was only required of common carriers and not contract carriers.

The current ICCTA provision on security rids itself of the distinction between common and contract carriers by stating:

The Secretary may require a registered *motor carrier* to file with the Secretary

a type of security sufficient to pay a shipper or consignee for damage to property of the shipper or consignce placed in the possession of the motor carrier as a result of transportation provided under this part.

49 U.S.C. § 13906(a)(3) (emphasis added).

Congress specifically changed the wording of the statute from "motor common carrier" to "motor carrier." Congress must have intended that the BMC–32 Endorsement requirement that was formerly applicable to common carriers be applied to all motor carriers. Thus, the BMC–32 Endorsement necessarily applies to all motor carriers, regardless of whether they were previously classified as a common or contract carrier. As such, the Court finds that a review of the plain language of ICCTA dictates that the BMC–32 Endorsement applies to all carriage contracts and that, as such, the Plaintiff is entitled to summary judgment in this case.

■ The Defendant asserts that, pursuant to the Transition Rule, 49 U.S.C. § 13902(d), the elimination of the distinction between contract and common carrier has not yet become effective.

Section 13902(d) of the ICCTA provides that:

Pending the implementation of rulemaking ... the Secretary may register a person under this section—(A) as a motor common carrier if such person would have been issued a certificate to provide transportation as a motor common carrier under this subtitle on the day before the effective date of this section; and (B) as a motor contract carrier if such person would have been issued a permit to provide transportation as a motor contract carrier under this subtitle on such day.

49 U.S.C. § 13902(d).

■ When interpreting a statute, the Court not only looks to the plain meaning of the words within the statute but also the placement and the purpose of a section within a statute. *See Holloway v. U.S.,* 526 U.S. 1, 6, 119 S.Ct. 966, 970, 143 L.Ed.2d 1 (1999) ("In interpreting the statute at issue, '[w]e consider not only the bare meaning' of the critical word or phrase 'but also its placement and purpose in the statutory scheme.' " (quoting *Bailey v. United States,* 516 U.S. 137, 145, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995))). The placement of this provision, as a subsection to the section dealing with registration, leads the Court to believe that the Transition Rule only applies to registration. This Transition Rule does not appear in Section 13906, which deals with insurance requirements of motor carriers. Thus, the Transition Rule should not be applied to insurance. For purposes of registration, the Secretary can continue to register carriers separately until new regulations are in place. However, for insurance purposes, the ICCTA governs and the BMC–32 Endorsement applies to all carriers.

Applying these rules to the case at hand, Plaintiff is entitled to compensation for the damages of its goods under the ICCTA. Plaintiff had contracted with Fredrickson, who was a motor carrier and was required to have a BMC–32 Endorsement to operate as such. The BMC–32 Endorsement applies to Fredrickson, and Defendant, regardless of whether Fredrickson is classified as a common or contract carrier because the ICCTA eliminated the distinction between the two. The BMC–32 Endorsement obligated Defendant to pay for any damages to property belonging to Plaintiff that Fredrickson was legally liable for.

For all of the reasons stated above, the Plaintiff's motion for summary judgment is hereby GRANTED and the Defendant's

motion for summary judgment is DE-NIED.

SO ORDERED.